760 A.2d 697

Ethel WILLIAMS

v.

HOUSING AUTHORITY OF BALTIMORE CITY.

No. 8, Sept. Term, 2000.

Court of Appeals of Maryland.

Oct. 10, 2000.

144

Deborah M. Thompson (Debra L. Gardner, Jonathan M. Smith and Kenneth M. Walden of the Public Justice Center, on brief), Baltimore; Stephen H. Sachs (Wilmer, Cutler & Pickering, on brief), Baltimore, of counsel, for petitioner.

Deborah Sterling and Sheila Brooks-Tahir (Office of Legal Affairs, Housing Authority of Baltimore City, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

This case presents an unfortunate combination of errors on the part of the District Court of Maryland and the Circuit Court for Baltimore City, exacerbated by a procedural lapse on the part of petitioner. We shall reverse the judgment of the Circuit Court and direct further proceedings in the District Court.

## PROCEDURAL HISTORY

Respondent is the Housing Authority of Baltimore City (HABC), an agency that, for over 60 years, has been responsible for providing decent, safe, and sanitary public housing for low-income residents of the City. *See* Maryland Code, Article 44A, § 3–102. Petitioner has been renting her home at 1513 North Bethel Street from HABC for more than 18 years. Beginning in June, 1998, she attempted to get HABC to repair conditions in the home that she considered dangerous. Among other things, the house was infested with rodents and other vermin; the bathtub leaked water, causing sinking holes in the floors and mildew and water damage in other rooms; and there was a large hole in the kitchen ceiling above the stove, from which debris fell into meals as she cooked. Petitioner informed HABC of those conditions in a letter dated June 4, 1998, and in follow-up telephone conversations, but the problems were not corrected. In May, 1999, petitioner filed a rent escrow action in the District Court.

Rent escrow actions in Baltimore City are authorized by both State public general law and a public local law of Baltimore City. Maryland Code, § 8–211 of the Real Property Article, applicable throughout the State, imposes an obligation on landlords, including HABC when acting in that capacity, to repair and eliminate conditions and defects that constitute, or, if uncorrected, would constitute, a serious and substantial threat to the life, health, or safety of the occupants. If the tenant has given written notice to the landlord of those conditions and, after a reasonable period, the landlord has failed to correct them, the tenant may bring an action for rent escrow in the District Court. After a hearing, the court may take a number of actions, including (1) entry of an order abating or reducing the rent to an amount determined by the court to be fair and equitable and to represent the existence of the defects found by the court to exist, (2) establishment of a rent escrow account into which the rent, whether or not abated, shall be paid, and (3) issuance of an injunction ordering the landlord to make repairs. If an escrow account is established, the court, after a further hearing, must decide

how the money paid into the account shall be disbursed—to the landlord if the repairs are made, to the tenant if they are not, to both of them in some proportion, to a mortgagee of the property to stay a foreclosure, or to a third person who makes the repairs. *See* § 8–211(m) and (n). A similar procedure, with essentially the same prerequisites and relief, is provided for by § 9.9 of the Public Local Laws of Baltimore City.

In addition to complaining about the conditions in her own home, petitioner apparently complained to HABC about the state of the unoccupied dwelling that HABC owned next door, at 1515 North Bethel Street. That house, she said, was filled with garbage and debris. The doors and windows were open, allowing for casual entrance by anyone. Noise from trespassers, she said, was often so loud that petitioner could not sleep at night, and their very presence made her feel unsafe. The filth in the property contributed to the rodent infestation in her home.

On June 7, 1999, a City Housing Inspector inspected petitioner's property and issued two code violation notices to HABC. One required that pipes and drains in the bathroom be repaired within 72 hours; the other required that certain woodwork, floors, and walls be repaired within 30 days. We are informed by HABC, in its response to the petition for *certiorari*, that neither the 72–hour violations nor the 30–day violations were entirely abated until July 28, 1999. On June 8, the City issued a violation notice for the adjoining property as well, ordering that the house be cleaned and boarded within 30 days. The record does not reveal when those violations were corrected.

Petitioner's rent escrow action was filed on the form printed and supplied by the District Court (Form DC/CV 83 (Rev.9/97)). It alleged the various deficiencies complained of by petitioner and noted by the City Housing Inspector, which, in the statutory pre-printed language, petitioner averred constituted or, if not corrected, would constitute a fire hazard or serious threat to the life, health, and safety of occupants. The form complaint contains printed language setting forth various

forms of relief, with boxes to check as appropriate. By checking various boxes and writing relevant numbers in the blank spaces, petitioner requested that the court (1) order HABC to repair the alleged defects, (2) reduce her rent to $100/month, (3) establish a rent escrow account until the conditions were corrected, and (4) award damages in the amount of $4,416 for breach of the covenant of quiet enjoyment or warranty of habitability.

An initial hearing was held on the complaint on June 29, 1999. At that hearing, the court apparently found some merit in petitioner's complaint, for it reduced the rent for the month of June, 1999, to $100 and established a rent escrow account for the regular rental payments of $477/month thereafter. The court postponed consideration of any further abatement to the time when it would be called upon to disburse the escrowed rent. Because, we are told, of the lateness of the hour and a large docket, the judge postponed argument on petitioner's claim for breach of warranty until July 28, 1999.

In preparation for the July hearing, petitioner filed with the court a memorandum in support of the damages she was seeking for breach of the two warranties. Her complaint regarding the warranty of habitability was based on the warranty implied by § 9–14.1 of the Public Local Laws of Baltimore City. Section 9–14.1 provides that, in any lease for the rental of a dwelling intended for human habitation, the landlord shall be deemed to warrant that the dwelling is fit for human habitation. She pointed out that § 9–14.2(b) makes the warranty a continuing one and allows the tenant to maintain an action for breach of the warranty at any time during the tenancy if the dwelling becomes unfit for human habitation. Section 9–14.2(d) directs that damages for breach of the warranty "shall be computed retroactively to the date of the landlord's actual knowledge of the breach of warranty and shall be the amount of rent paid or owed by the tenant during the time of the breach less the reasonable rental value of the dwelling in its deteriorated condition." Petitioner recounted the various deficiencies complained of, noted that she had brought the problem to HABC's attention in June, 1998, and

stated that nothing had been done to that point to correct them. She averred that those deficiencies constituted a violation of the implied warranty of habitability, that the agreed rent on her home was $468/month, that, because of the alleged conditions, the reasonable rental value of the home was only $100/month, and that, as a result, for the 12 month period from June, 1998, through May, 1999, she had overpaid $368/month, or a total of $4,416.[1]

The warranty of quiet enjoyment alleged by petitioner was that provided for in Maryland Code, § 2–115 of the Real Property Article ("[I]n a lease, unless the lease provides otherwise, there is an implied covenant by the lessor that the lessee shall quietly enjoy the land"). The breach, she said, arose from the condition of the property next door, which served to deprive her of the quiet enjoyment of her home. She did not quantify the damages sought for the violation of that warranty.

It appears that, pursuant to an established rotation system, the judge who had presided at the initial hearing and postponed argument on the warranty claims was no longer handling the landlord-tenant docket on July 28, and the judge before whom the parties then appeared decided that warranty claims were not cognizable in "rent court." Although requested, a transcript of the proceeding that day has never been prepared—a matter we shall consider further—but the parties have agreed that the judge, when presented with petitioner's claim, concluded that the "rent division" or "rent court" of the District Court had no "jurisdiction" to consider the breach of warranty claims and instructed petitioner to file separate claims at another location.[2] It is not clear what, if any, kind of

---

1. Petitioner noted that her rent was actually $477/month but, because in an earlier action by HABC against petitioner, HABC had alleged that the rent was $468, petitioner used the lower figure in her calculations. Although use of the lower figure had the effect of lowering the requested damages, which inured to HABC's benefit, petitioner should have used the correct figure of $477 and simply pointed out HABC's error.

2. At the time, landlord-tenant actions in Baltimore City were handled at the District Court building on East North Avenue, which is where

order was entered, but, effectively, petitioner's claim for damages for breach of warranty was dismissed for lack of jurisdiction. Petitioner continued to pay her full rent in escrow pursuant to the June 29 order. On April 18, 2000, the District Court disbursed the accumulated funds, 75% ($3,652) to petitioner and 25% ($1,217) to HABC, indicating a determination by the court that, even after June, 1999, petitioner was entitled to a partial abatement of the rent.

Aggrieved at the dismissal of her warranty claim, petitioner filed a notice of appeal on August 27, 1999. The notice of appeal was signed by an attorney from the Public Justice Center, as counsel for petitioner, and it gave the attorney's address and telephone number at the Public Justice Center. The Public Justice Center occupies space in the Legal Aid Building at 500 E. Lexington Street, in Baltimore. The notice stated that, in accordance with § 12–401(f) of the Courts and Judicial Proceedings Article and Maryland Rule 7–102, the appeal was to be heard on the record because the amount in controversy exceeded $2,500, and that, in accordance with Maryland Rule 7–103, all filing fees would be waived. Contemporaneously with filing the notice of appeal, the attorney filed in the District Court a request for preparation of the transcript of the July 29 hearing. In that request, she checked a box adjacent to pre-printed language averring that petitioner was indigent and was seeking a waiver "of costs." [3] She did not specifically request a waiver of the transcript cost, although the form warned that a deposit of $50 was required for the transcript.

Possibly because petitioner failed to make the required $50 deposit, or other arrangements for payment, a transcript of

---

petitioner filed her rent escrow action. Other civil cases were tried in the District Court building on East Fayette Street. According to the parties, the judge declared that the breach of warranty claim would have to be refiled at the Fayette Street building. We note that, as of the date of this Opinion, the landlord-tenant cases are being handled at the Fayette Street courthouse, along with the other civil cases.

3. This form too was a District Court printed form—DC/CV 37 (Rev.7/93).

the proceeding was never prepared or filed. Nonetheless, on September 17, 1999, the balance of the District Court record was transmitted to the Circuit Court. Someone—who is not clear—wrote on the District Court document entitled "Receipt for Papers Delivered to Circuit Court of Baltimore City" the notation "Rent Case Escrow De Novo Costs Waived." Whether or not as a result of that notation, the Circuit Court waived its filing fee, treated the appeal as a *de novo* one, placed the case on an expedited track, and set trial for November 9, 1999.[4] Notwithstanding that both the District Court records and the Circuit Court Case History sheet showed that petitioner was represented, gave the name and address of the attorney, and directed that mail to petitioner be sent in care of the attorney at the attorney's address, neither petitioner nor the attorney were notified of the trial date. It appears that no notice at all was sent to the attorney; notice was sent addressed to the petitioner, but it was sent to the 500 E. Lexington Street address, where no one in the mail room would know her or have any record of her presence in the building. When neither petitioner nor her attorney appeared for trial, the court dismissed the appeal for lack of prosecution.

On November 17, 1999, counsel for petitioner filed a motion for new trial and reinstatement of the appeal. She noted that the appeal should have been heard on the record, that neither she nor her client were notified of the hearing, and that the hearing was premature because the transcript had never been filed. The lack of notice was attested to in an accompanying affidavit of the attorney. HABC did not respond to the motion and thus did not attempt to contest the assertions in it. No hearing was requested on the motion, and none was held. On December 16, 1999, the court summarily denied the mo-

---

4. The parties seem to agree that it was the clerk of the Circuit Court who erroneously treated the appeal as a *de novo* one, although that is not at all clear from the record. It is just as likely that the mistake was made in the District Court, for otherwise that court would not have transmitted the record absent the transcript. Which clerk made the error is unimportant.

tion. Petitioner then filed a petition for *certiorari*, which we granted. The issue presented is whether the Circuit Court abused its discretion in denying petitioner's motion to revise the judgment dismissing her appeal. In resolving that issue, we need to address whether petitioner had·a meritorious claim in the Circuit Court, which necessarily leads us to examine the determination of the District Court judge that breach of warranty claims of the kind asserted by petitioner may not be filed (or tried) in a rent escrow case.

## *DISCUSSION*

### *Procedural Errors*

■ We begin with the undisputed fact that petitioner's appeal to the Circuit Court was to be heard on the record made in the District Court. It was not a *de novo* appeal, and there was nothing in the District Court record from which anyone could reasonably believe that it was a *de novo* appeal. Some clerk simply mislabeled the case when, or just before, the record was transmitted to the Circuit Court, and no one apparently looked into the file itself thereafter. There were only a few documents in the District Court record, and nearly all of them—the initial petition, the memorandum filed by petitioner, the notice of appeal, and the request for transcript—disclosed on their face that the claim exceeded $2,500 and that this was an appeal on the record.

■ Maryland Rule 7–114 lists the permissible reasons for dismissing an appeal from the District Court. One is if an appeal *de novo* has been withdrawn pursuant to Rule 7–112, and another is if the record from the District Court was not transmitted within the time prescribed by Rule 7–108. Md. Rule 7–114(d) and (e). None of the other permissible grounds stated in Rule 7–114 are relevant to this case. Rule 7–112, which deals with *de novo* appeals, provides that an appeal is considered withdrawn if the appellant fails to appear as required for trial, in which event the Circuit Court shall dismiss the appeal and return the file to the District Court. Md. Rule 7–112(d). That is the provision—the only provision—under

which the Circuit Court acted. As we have indicated, however, that provision did not apply because the appeal was not to be heard *de novo.* The court clearly erred, therefore, as a matter of law, in dismissing the appeal because of the nonappearance of petitioner.

 Petitioner brought the error to the court's attention through a motion filed within 10 days after entry of the judgment. Whether such a motion is considered under Rule 2–534 or 2–535(a), both of which apply, the court had broad discretion to grant or deny relief. We have made clear, however, that the court must exercise its discretion liberally, "lest technicality triumph over justice." *J.B. Corp. v. Fowler,* 258 Md. 432, 435, 265 A.2d 876, 878 (1970) (quoting *Eshelman Motors Corp. v. Scheftel,* 231 Md. 300, 301, 189 A.2d 818, 818 (1963)); *see also Haskell v. Carey,* 294 Md. 550, 558, 451 A.2d 658, 663 (1982). A number of factors may enter into the exercise of that discretion, but certainly, when the court is reliably informed, without contradiction from an opposing party, that its judgment was based on a clear mistake made by court personnel and was erroneous as a matter of law, that it was based solely on the nonappearance of a person who was never properly notified of the hearing, and that there is an arguably meritorious claim or defense, it is an abuse of discretion not to strike the judgment and allow further proceedings. *See Triplin v. Jackson,* 326 Md. 462, 605 A.2d 618 (1992).

Because HABC did not respond to petitioner's motion, it gave the Circuit Court no basis for denying the motion. On what the court had before it when it acted on the motion, the court clearly abused its discretion in not granting the motion.

 Before this Court, HABC, citing *Purvis v. Forrest Street Apts.,* 286 Md. 398, 408 A.2d 388 (1979) and *Cottman v. Princess Anne Villas,* 340 Md. 295, 666 A.2d 1233 (1995), seeks to sustain the judgment on the ground that, even if the Circuit Court had treated the appeal as a "record" appeal, the court was bound to dismiss the appeal in any event because of petitioner's failure to produce the transcript of the District

Court proceeding. In effect, HABC is arguing that the Circuit Court could and should have dismissed the appeal under Rule 7–114(d). *Purvis* and *Cottman* did indeed hold that an appeal from the District Court on the record should be dismissed if the appellant fails to order a transcript or provide the necessary record, and, with one caveat which we did not need to address in either of those cases, that holding remains valid. For three reasons, *Purvis* and *Cottman* do not control here. First, the argument now being made to us was not presented to the Circuit Court, as it was in both *Purvis* and *Cottman.* Second, the lack of a transcript was not the basis on which the Circuit Court acted. Third, even if the issue had been presented to the Circuit Court, that court would have had the discretion not to dismiss the appeal, and we shall not assume that it would have declined to exercise that discretion.

*Purvis* and *Cottman* held that dismissal was required because there was no sufficient reason given in those cases for doing otherwise. The appellant in both cases deliberately did not order a transcript because it believed, erroneously, that the appeal was to be heard *de novo.* Rule 7–114 states that the Circuit Court "may" dismiss an appeal if (1) the District Court record is not transmitted timely, and (2) the failure is not due to the act or omission of a judge, clerk, stenographer, or appellee. Dismissal is not mandatory, however, even in that setting, if there is some good reason to do otherwise. Here, petitioner *did* order a transcript and was apparently under the impression that she was entitled to a free one that would be produced by the District Court without further effort on her part. Had any of this been considered by the Circuit Court, that court, in light of the single issue of law presented in the appeal and the fact that petitioner was continuing to pay her full rent into escrow, may have determined either that it could proceed without a transcript or that the lapse was excusable and that HABC would suffer no prejudice if the court allowed additional time to produce the transcript.

At this point, it does not appear that a transcript would be necessary, as the parties have agreed to the one relevant fact that would be revealed by a transcript—that the District

Court judge dismissed the breach of warranty claim because of his belief that the "rent court" had no jurisdiction to try it. Whether petitioner has a meritorious claim on appeal rises or falls with that legal conclusion. No evidence need be reviewed. If the District Court judge was incorrect, the case would have to be remanded for the trial that never occurred. That is the remaining issue.

### Correctness of District Court Determination

█ Whether the District Court erred in dismissing petitioner's breach of warranty claim is not before us *directly*, but only in the context of whether petitioner had a meritorious claim on appeal. Our answer to that, however, effectively answers the question on the merits.

HABC offers in support of the District Court's conclusion the notion that (1) pursuant to the authority provided by § 1–607 of the Courts and Judicial Proceedings Article, the District Court in Baltimore City has created a Rent Court, which is a "functional division" of the court, (2) the authority of that functional division is limited to exercising the jurisdiction over landlord-tenant actions conferred by § 4–401(4) of that article, (3) § 4–401(4) jurisdiction does not encompass claims for breach of warranty of habitability or quiet enjoyment, and (4) although the original jurisdiction of the District Court to hear an action involving landlord and tenant granted by § 4–401(4) of the Courts and Judicial Proceedings Article is uniform throughout the State, "a functional division of the District Courts of Baltimore City, such as the 'Rent Court,' can effectively 'cap' that jurisdiction in order to increase efficiency and to promote the overall smooth operation and effective administration of the District Court as deemed necessary."

Each element of that hypothesis is flawed, beginning with the assumption that a "functional division" of the court exists in Baltimore City for landlord-tenant actions. For purposes of the operation and administration of the District Court, § 1–602 of the Courts and Judicial Proceedings Article divides the State into 12 districts, one of which is Baltimore City. Section 1–607, in addition to providing for an administrative judge for

each district, permits a district, with the approval of the Chief Judge of the court, to "be divided into civil, criminal, traffic, or other functional divisions if the work of the District Court requires." There is no indication, however, that the administrative judge in Baltimore City or the Chief Judge has ever created a "functional division" of the court whose jurisdiction is limited to cases arising under § 4–401(4). The court has only the three divisions provided for in the statute, and landlord-tenant cases have always been part of the civil division of the court. *See* ANNUAL REPORT OF THE MARYLAND JUDICIARY (1998–99) at 72–82. All that has occurred, to the best of our knowledge, is that, in Baltimore City, landlord-tenant cases are placed on separate dockets that, until recently, were heard at a different location than other civil cases. There is no "Rent Court" or "Rent Division" in Baltimore City; those terms are simply a vernacular description of the separate dockets.

A further flaw is in HABC's assumption, based on language in *Greenbelt Consumer v. Acme Mkts.*, 272 Md. 222, 322 A.2d 521 (1974), that the landlord-tenant jurisdiction conferred on the District Court by § 4–401(4) does not include jurisdiction over breach of warranty claims. HABC does not deny the court's jurisdiction over warranty claims that do not exceed $20,000—the monetary jurisdictional limit of the District Court—but it urges that such claims do not invoke the landlord-tenant jurisdiction and thus may be excluded from dockets limited to landlord-tenant claims.

*Greenbelt* involved a breach of contract action to recover $12,000 in past rent from the plaintiff's erstwhile tenant, which had already vacated the premises. The property was located in Virginia; the transitory action was filed in Baltimore County. The District Court entered judgment for the plaintiff, which the Circuit Court affirmed. At the time, the jurisdiction of the District Court over breach of contract claims was limited to actions where the debt or damages did not exceed $5,000, but the plaintiff argued that its action to recover the rent was "an action involving landlord and tenant," over which the District Court had exclusive original jurisdiction without

regard to the amount in controversy. Section 4–401(4) vests jurisdiction over "[a]n action involving landlord and tenant, distraint, or forcible entry and detainer, regardless of the amount involved." The plaintiff's broad reading of the phrase "action involving landlord and tenant," we observed, would not only make the separate mention of distraint, forcible entry, and detainer superfluous but would require that all actions that happen to involve a landlord and a tenant be brought in the District Court, irrespective of the nature of the action or the amount in controversy. That, we said, could not have been intended by the General Assembly. Rather, we concluded that the phrase "action involving landlord and tenant" was intended to be limited to "those possessory *in rem* or *quasi in rem* actions that provided a means by which a landlord might rapidly and inexpensively obtain repossession of his premises situated in this State or seek security for rent due from personalty located on the leasehold." *Id.* at 229, 322 A.2d at 525.

Our specific holding was that the landlord-tenant jurisdiction under § 4–401(4) was limited to actions by landlords under § 8–401 of the Real Property Article for nonpayment of rent, distraint actions under §§ 8–301 through 8–332 of that Article, and actions for forcible entry and detainer authorized by British statutes and § 8–402(b) of the Real Property Article, that it did not include a contract action merely to recover past rent, and that, as the amount in controversy in that action exceeded the monetary jurisdiction of the District Court, the action should have been dismissed.

*Greenbelt* must be taken in context. As noted, it was a transitory breach of contract action filed in Baltimore County against a former tenant for money damages in an amount exceeding the monetary jurisdiction of the court. The thrust of the holding was to limit the landlord-tenant jurisdiction to actions *in rem* or *quasi in rem*—to actions that affect specific property and that must be brought in the county where the property is located. Unfortunately, the list that we gave was incomplete. For one thing, it took no account of the rent escrow law then in effect in Baltimore City (§ 9.9 of the Public

Local Laws of Baltimore City); nor could it have taken account of the State-wide rent escrow law first enacted in 1975—a year after the case was decided. A rent escrow action under the Public Local Law, whether or not technically *in rem* or *quasi in rem*, is property-specific and must be brought in the District Court in the city. *See* Public Local Laws of Baltimore City, § 9.9(c)(1) and Real Property Article, § 8–211(*o*). Such an action, which may be filed as a defense in answer to a landlord's action to recover possession, to recover rent, or distress for rent and may lead to abatement of rent, and payment of rent into escrow, necessarily constitutes "[a]n action involving landlord and tenant." [5]

Much the same nexus is present in claims for breach of the implied warranty of habitability under § 9–14.1 of the Public Local Laws of Baltimore City. The warranty arises from the lease of dwelling property in Baltimore City. It is that dwelling that the landlord warrants is fit for human habitation, and it is the lease, with the implied warranty, that the action seeks to enforce. The damages, moreover, are not general damages but are limited to the difference between the amount of rent paid or owed and the reasonable rental value of the dwelling in its deteriorated condition, commencing from the time that landlord acquired actual knowledge of the breach. The whole action is thus tied to the property and the lease and provides a remedy not dissimilar to that available in a rent escrow action. Breach of warranty claims under § 9–14.1, therefore, also fall within the § 4–401(4) jurisdiction of the court, without regard to amount. In this case, of course, it makes no difference whether the warranty claim falls within § 4–401(4) jurisdiction, for, unlike the situation in *Greenbelt*, petitioner's claim

---

5. Section 4–401(7)(i) of the Courts and Judicial Proceedings Article provides a separate grant of jurisdiction for a petition for injunction filed by a tenant under § 8–211 or a local rent escrow law. That provision was enacted in 1988, as part of the law that first authorized injunctive relief under § 8–211 and § 9.9 of the Public Local Law, and was necessary to provide the equitable jurisdiction that otherwise would be lacking to issue injunctions. *See* 1988 Md. Laws, ch. 488.

was well within the monetary jurisdiction of the District Court.

Maryland Rule 3–303(a) requires that, "[a]s far as practicable, all pleadings [filed in the District Court] shall be prepared on District Court forms prescribed by the Chief Judge of the District Court." Rule 3–303(c) permits a plaintiff to state as many separate claims as the party has, regardless of consistency, and section (e) of the rule provides that all pleadings shall be so construed as to do substantial justice. As noted, petitioner's claim was filed on the pre-printed District Court form, which expressly allows an action for breach of warranty of habitability or quiet enjoyment to be joined with a rent escrow action. That suggests, as strongly as anything could, that the District Court does not regard warranty of habitability or quiet enjoyment claims as having to be filed separately from other landlord-tenant actions.

Nor would it do substantial justice to require a tenant to split his or her claim in that manner. HABC expresses concern that the trial of warranty claims together with rent escrow actions would hamper the court's efficiency in handling the landlord-tenant dockets. It offers no data to support that concern, only speculation. The fact is that over 96% of the landlord-tenant cases, both Statewide and in Baltimore City, are uncontested, so, although the dockets in some of the metropolitan districts tend to be large, few of the cases on those dockets present an evidentiary conflict that requires an actual adjudication of disputed facts or law.[6] In a rent escrow action, the court must hear evidence regarding the condition of the property, notice to the landlord, responsibility for the conditions complained of, and the reasonable rental value of

---

6. In Fiscal Year 1999, out of a total of 807,000 civil cases filed in District Court Statewide, nearly 570,000 were landlord-tenant cases, but only 21,000 of those landlord-tenant cases (3.7%) were contested. In Baltimore City, 228,500 civil cases were filed, of which 175,761 were landlord-tenant, but only 5,294 of the landlord-tenant cases (3.0%) were contested. *See* ANNUAL REPORT OF THE MARYLAND JUDICIARY 1998–99, Table DC–4 at 77. Those figures are consistent with the data reported in earlier years.

the property. Those same factors are involved in a warranty of habitability claim. Except for the period of time involved— the rent escrow case focusing on the current situation and the breach of warranty action looking back for some period—the evidence necessary to establish a rent escrow claim will usually be the same evidence necessary to establish the warranty claim. We fail to see how a joinder of the claims for trial will cause any significant slow-down in the District Court. Indeed, splitting the claims for trial could cause serious disruption and inefficiency. The court would have to conduct two trials, which would not only force two appearances by the parties and their witnesses but could well lead either to inconsistent findings or to collateral estoppel issues that are best avoided.

In summary, there is no legal, factual, or practical basis for the District Court judge's conclusion that a claim for breach of warranty of habitability under § 9–14.1 of the Public Local Laws of Baltimore City or of quiet enjoyment under Real Property Article, § 2–115 cannot be joined and tried with a rent escrow action. The court erred in dismissing the warranty claim. Accordingly, petitioner's appeal to the Circuit Court was meritorious, a fact which cements our conclusion that the Circuit Court erred in dismissing the appeal and abused its discretion in not granting the motion to reinstate it.

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT FOR ENTRY OF ORDER REVERSING JUDGMENT OF DISTRICT COURT DISMISSING BREACH OF WARRANTY CLAIM AND REMANDING CASE TO DISTRICT COURT FOR FURTHER PROCEEDINGS ON THAT CLAIM; RESPONDENT TO PAY THE COSTS.