57 A.3d 1015

**FRANKLIN CREDIT MANAGEMENT CORPORATION**

v.

**Fred NEFFLEN.**

**No. 989, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

Dec. 20, 2012.

---

**3.** *See supra,* Part I(A), discussing the trust analysis in detail.

Jason C. Rose (Nathaniel S. Berry, Venable, LLP, on the brief), Baltimore, MD, for Appellant.

Scott C. Borison (Legg Law Firm, LLC, on the brief), Frederick, MD, for Appellee.

Panel: GRAEFF, BERGER, J. FREDERICK SHARER, (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal arises from a dispute between Franklin Credit Management Corporation ("Franklin"), appellant, and Fred Nefflen, appellee, regarding the enforcement of a settlement agreement. In April 2010, Mr. Nefflen filed a Complaint in the Circuit Court for Frederick County alleging that Franklin, the company servicing his mortgage, had violated the terms of a settlement agreement entered into by the parties in June 2009 pertaining to the mortgage. After Franklin failed to file responsive pleadings and a default hearing was held, which Franklin did not attend, the circuit court entered a default judgment in favor of Mr. Nefflen on all four counts in his complaint. The court found that Mr. Nefflen was entitled to $203,301.84 in damages. The court subsequently denied

Franklin's Motion for New Trial or to Alter or Amend Judgment.

On appeal, Franklin presents the following questions for our review:

1. Did the [c]ircuit [c]ourt err as a matter of law or abuse its discretion in granting [Mr.] Nefflen a default judgment for his defamation claim because the failure to correct a negative credit report does not constitute a viable claim for defamation or, alternatively, because the defamation claim was not viable in the absence of factual allegations to support that Franklin acted with malice or intent to harm [Mr.] Nefflen?

2. Did the [c]ircuit [c]ourt err as a matter of law or abuse its discretion in granting [Mr.] Nefflen a default judgment for violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act because Franklin's request for verification that [Mr.] Nefflen had flood insurance in accordance with federal requirements was not an attempt to collect a debt owed to Franklin or, alternatively, because Franklin's request constituted a breach of a Settlement Agreement, not a tort under the Maryland Consumer Debt Collection Act?

3. Did the trial court abuse its discretion in denying Franklin's Motion to Alter or Amend the Judgment where Franklin's Motion established that Nefflen did not plead viable claims and that the judgment was erroneous as a matter of law?

4. Did the trial court abuse its discretion in denying Franklin's Motion to Alter or Amend the Judgment where Franklin's failure to defend was the result of misunderstanding regarding the timing of the default judgment hearing and where Franklin's Motion raised meritorious defenses?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Mr. Nefflen refinanced his mortgage with Silver Financial Group, Inc. for $134,036.50. He refinanced again in 1998, increasing his loan to $177,000. The 1998 loan was originally payable to CIT, and in 1998, CIT assigned its interest in the loan to Bank One, who in turn, assigned the servicing rights of the loan to Franklin on September 1, 2004. Prior to the assignment to Franklin, Mr. Nefflen had modified his loan with Bank One, which resulted in a monthly payment amount of $1,059.36, effective May 2003.

When Franklin began servicing the loan, it claimed that Mr. Nefflen's monthly payment was $1,385.51. The monthly statements that it sent Mr. Nefflen alleged that he was behind on his payments after he paid the $1,059.36 due pursuant to his agreement with Bank One. In October 2005, after ten months of correspondence between Mr. Nefflen and Franklin regarding the monthly payment amount, Franklin sent a letter to Mr. Nefflen "confirm[ing] that the payment due on the loan was the amount set forth in the loan modification." Franklin, however, continued to send statements asserting that Mr. Nefflen's loan account was overdue, and it reported to credit agencies that Mr. Nefflen was delinquent in his payments.

Mr. Nefflen subsequently filed suit against Franklin. On June 2, 2009, the parties settled the case. Among other agreements, the settlement provided that "Franklin will delete all derogatory information from any Credit Reports and report the Nefflen Loan as current and paid as agreed," and that "[t]he parties agree that there shall be no demand or requirement for flood insurance of any kind in connection with the Nefflen Loan."

On April 13, 2010, Mr. Nefflen filed another complaint against Franklin, contending that Franklin was in breach of these two provisions of the settlement agreement. Specifically, he stated that Franklin "has not deleted the derogatory information from [his] credit reports," and it "continued to make demands for flood insurance." In his complaint, Mr. Nefflen alleged violations of the Maryland Consumer Debt

Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA"), as well as counts for defamation and breach of the settlement agreement.

A writ of summons dated April 19, 2010, was sent to Franklin, care of "CSC Lawyers Incorporating," Franklin's registered agent. On July 12, 2010, Mr. Nefflen submitted a proof of service and delivery receipt to the circuit court, stating that, on April 23, 2010, service was completed by "certified mail, return receipt requested, on [Franklin's] registered agent." On August 31, 2010, the court issued and sent to Franklin a Notice of Hearing/Trial, which stated that a Status Conference had been set for October 22, 2010.

Franklin did not file an Answer. On September 29, 2010, Mr. Nefflen filed a Motion for Entry of Default, stating that Franklin "was served on April 23, 2010," and "[t]he time has expired for [Franklin] to Answer the complaint." The Certificate of Service attached to Mr. Nefflen's motion indicated that the Motion for Entry of Default was mailed to Franklin.

On October 6, 2010, the circuit court entered an Order of Default in favor of Mr. Nefflen and sent Franklin a Notice of Default Order. On January 18, 2011, a Hearing Notice was issued and sent to Franklin, advising that a default hearing had been set for March 8, 2011.

On March 2, 2011, Mr. Nefflen filed a Motion to Postpone Hearing, which included a Certificate of Service indicating that the motion was sent to Franklin. On March 7, 2011, the day before the hearing was scheduled, the circuit court granted Mr. Nefflen's motion. Also on March 7, 2011, the day the Motion to Postpone Hearing was granted, a Hearing Notice changing the hearing date to April 7, 2011, was issued and sent to Franklin. The notice read as follows, under the heading of "Date and Time": "04/07/11 02:00 PM—reset from 03/08/11."

On April 7, 2011, the court held a default hearing. Mr. Nefflen was the only witness to testify; Franklin was not present. Mr. Nefflen explained that, pursuant to the June 2, 2009, settlement, which he introduced into evidence, Franklin

had agreed that it would delete derogatory information from his credit report and would not require flood insurance on his property. On June 19, 2009, however, two weeks after the settlement date, he received a letter from Franklin about flood insurance. The letter stated:

> As you are aware your Mortgage ... requires you to maintain adequate Flood insurance coverage to protect our interest in the property. Our records show that your property is located in a Special Flood Hazard Area (SFHA) flood zone AE, and Flood Insurance is required under the Flood Disaster Protection Act of 1973, as amended, a Federal law. However, we have reviewed our records and determined that we do not have a current Flood insurance policy on file for the period starting on 02/01/2009. This requires your immediate attention.

On two subsequent dates, July 27, 2009, and October 23, 2009, Franklin sent Mr. Nefflen additional letters. These letters were similar to the one sent in June, but they additionally stated:

> If you wish to contest this Flood insurance requirement or the special Hazard Flood Area flood zone AE, you must provide a Letter of Map Amendment/Revision (LOMA/LOMR) from the Federal Emergency Management Agency (FEMA) indicating that the property does not require Flood insurance.

On November 13, 2009, and February 22, 2010, Franklin sent additional letters regarding flood insurance. These letters stated, in pertinent part, as follows:

> We wrote you previously to let you know that we had not received a current Flood Insurance policy for your property for the period starting on 02/01/2009. Since we did not receive a response from you or your agent, we have purchased Flood coverage in the amount of $146,589.00. The annual cost of $1,650.92, which includes applicable taxes and fees, will be charged to your account in monthly increments, and your mortgage payment will increase accordingly.

Mr. Nefflen then testified regarding his monthly mortgage payments to Franklin, specifically in reference to his escrow balance, which was increased to reflect the charges incurred for Franklin's purchase of flood insurance on Mr. Nefflen's behalf.

In January 2010, six months after the June 2009 settlement agreement, Mr. Nefflen obtained a copy of his credit report from Transunion. The report, dated January 18, 2010, listed Mr. Nefflen's account with Franklin under the "Adverse Accounts" heading; the remaining accounts on Mr. Nefflen's report were listed as "Satisfactory Accounts." The statement reflected that 18 late payments were made on Mr. Nefflen's account with Franklin, all of which occurred prior to June 2007. Mr. Nefflen also introduced a credit report from Equifax, and a second report, dated January 26, 2011, from Transunion, which also reported that he had been late on his payments to Franklin dating back from May 2007.

Mr. Nefflen testified that he was "physically . . . just a wreck sometimes," due to his credit report and the bills regarding flood insurance. When he tried to buy a new car, "Franklin came up on [his credit report] and they said there's no way they could do it." His situation with Franklin had "caused a lot of damage to my family," due to "the medications my wife and son are on because of it," and because he and his wife were unable to go out because Mr. Nefflen paid cash for everything.

At the conclusion of Mr. Nefflen's testimony, Mr. Nefflen's counsel argued that "the credit reports before the Court show that to this day [Franklin] continue[s] to report false information about Mr. Nefflen." Regarding Franklin's liability, as well as the amount of damages, Mr. Nefflen's counsel argued as follows:

[A]nd we're asking this Court, we don't know what the exact amount of damages should be, but this is just wrong behavior on their part and I don't know if the empty seats here today are because they decided it might just be easier on them not to be here or not. But they were served. They

know about it. So we would ask the Court to award damages to Mr. Nefflen on each of his causes of action and the three, the three main causes of action.

With respect to the claim under the Maryland Consumer Debt Collection Act, Md.Code (2005 Repl. Vol) § 14–203 of the Commercial Law Article ("C.L."), counsel argued that "[a] collector who violates any provision of the subtitle is liable for any damages proximately caused by the violation including damages for emotional distress or mental anguish suffered with or without accompanying physical injury," noting that the damages allowed were "pretty broad" and included "frustration or embarrassment or ... humiliation."

With respect to the claim for defamation, counsel argued that a statement regarding "someone's creditworthiness is slander per se so there's no requirement of special damages," asserting that "emotional damages for that type of claim is appropriate." With respect to the claim pursuant to the Maryland Consumer Protection Act, counsel asserted that "the violation of the Maryland Consumer Debt Collection Act is a per se violation of the Maryland Consumer Protection Act," noting, however, that "the Consumer Protection Act provides for attorneys' fees. The Consumer Debt Collection Act by itself does not."

After Mr. Nefflen concluded his case, the court found that Franklin had breached the terms of the settlement agreement by requesting that Mr. Nefflen obtain flood insurance on the property and "ultimately ... tax[ing] his account with $1,650.92 on two different occasions representing flood insurance, which by their agreement they indicated that [Mr. Nefflen] did not owe." The court found that "the damages for breach of contract are [$]3301.84."

The court continued:

I also find that it is a clear violation of count one of the ... Maryland Consumer Credit Reporting Act and that [Mr. Nefflen] has suffered damage in mental anguish, sleepless nights, anxiety, and the ability, inability to get appropriate credit merely because of the negative credit reporting by

Franklin, which they agreed to remove from his credit reports, and that . . . [Mr. Nefflen] is entitled to damages under that count in the amount of $100,000. I also find that [it] has slandered Mr. Nefflen's good name. In looking at these reports, again, the only information to a negative account is Franklin Credit and that is quite frankly because of them not providing the necessary assurances to the credit reporting agencies which they agreed to do, and by putting negative references on for non-payment I'm assuming of the obligations that they agreed he didn't owe in the first place, and quite frankly that's outrageous and I find that [Mr. Nefflen] is entitled to damages in that instance to $100,000. So, and I think on count three, which is the Consumer Protection, that's really covered for the damages in count one and with respect to attorney's fees those were authorized under count four pursuant to the settlement agreement. So total damages are . . . $203,301.84, plus attorneys' fees to be submitted, plus costs of this suit.

On April 29, 2011, the court issued a default judgment, which was entered on May 2, 2011. The order reflected the court's ruling at the April 7, 2011, hearing, and it indicated that Mr. Nefflen was present at the hearing with counsel, but "[t]here was no appearance by the Defendant." On May 2, 2011, the court issued notices of judgment, which were sent to Franklin.

On May 12, 2011, Franklin filed a Motion for New Trial or to Alter or Amend Judgment pursuant to Maryland Rules 2–534 and 2–535.[1] The motion stated that:

2. On or about May 26, 2010, undersigned counsel wrote to [Mr. Nefflen's] counsel and provided copies of the credit reporting by Franklin from September 2009 and April 2010, which showed that in compliance with the settlement agreement Franklin had not been reporting any negative credit

---

1. Although the motion referred to Rules 3–534 and 3–535, applicable to civil matters in the District Court, other statements in the motion make clear that this was a typographical error, and counsel meant to refer to Rules 2–534 and 2–535.

information regarding Mr. Nefflen. With regards to the flood insurance issue, undersigned counsel advised [Mr. Nefflen's] counsel that [the Federal Emergency Management Agency] had declared Mr. Nefflen's property to be in a special hazard flood area and that Franklin had requested a waiver; however, Franklin needed Mr. Nefflen to request the waiver as he owned the property.

[3.] On or about March 9, 2011, Franklin received a notice of hearing from the Court which indicated that a hearing on damages was scheduled for April 7, 2011. The next day, on March 10, 2011, Franklin received the Order entered March 8, 2011 which ordered the damages hearing to be postponed. Due to the order of receipt of the notice and order, Franklin was under the impression that the April 7, 2011 hearing was postponed. Attached hereto are the receipts from the Corporation Service Company which demonstrate when the notice are [sic] order were received.

[4.] As Franklin did intend on attending the damages hearing, but was under the impression that the April 7, 2011 hearing had been postponed, pursuant to Rule 2–533 Franklin is requesting that a new damages hearing be set. Additionally, Franklin submits that a new damages hearing be set as it does not appear [Mr. Nefflen] was forthcoming with facts concerning the credit report by Franklin and the flood insurance issues.

[5.] Franklin also submits that the judgment in this matter should be altered or amended pursuant to Rule 2–534.

[6.] While the facts in the complaint may be deemed admitted due to default, the Court must still make a determination as to liability and there must be satisfactory proof of damages. Rule 2–613(f); *Banegura v. Taylor*, 312 Md. 609 [541 A.2d 969] (1988).

The remainder of the motion set forth Franklin's arguments that there was no basis to find liability for the counts for defamation, violation of the MCPA, and violation of the MCDCA. Franklin did not challenge the court's finding on the count for breach of the settlement agreement.

On June 1, 2011, Mr. Nefflen filed a motion opposing Franklin's Motion for New Trial or to Alter or Amend Judgment. He argued that Franklin's assertion "that it did not understand the date of the hearing because it received a notice and an order" was meritless, and Franklin's legal arguments were unpersuasive.

On June 6, 2011, the circuit court denied Franklin's "Motion to Vacate or for other relief." This timely appeal followed.

## DISCUSSION

### I.

### Motion to Dismiss/Strike Portions of the Appendix

Mr. Nefflen first asserts that Franklin's arguments are not properly before this Court, and the appeal should be dismissed. In support, he incorporates the arguments he makes in his Motion to Dismiss Appellant's Appeal or in the Alternative to Strike Appellant's Brief and Appendix. In that motion, Mr. Nefflen contends that: (1) Franklin "has included documents not in the record"; (2) "[t]he provisions of Rule 2–535(a) do not apply to liability issues for a default judgment pursuant to Rule 2–613(g)"; (3) Franklin's "arguments were not presented to the circuit court"; and (4) Franklin "never moved to vacate the order of default or default judgment."

In its motion opposing Mr. Nefflen's motion to dismiss or strike, Franklin responds in several ways. Initially, it argues that this Court may take judicial notice of the documents included in its appendix that were not part of the record below. Alternatively, it argues that, if this Court decides not to consider the documents contained in its appendix, the proper remedy is to strike those documents, not to dismiss the appeal or strike its briefs. Finally, Franklin argues that the grounds raised do not warrant dismissal, but rather, they are substantive arguments relating to the merits of the issues on appeal.

We agree with Franklin that the issues raised in the motion, other than to strike the documents included in Frank-

lin's brief that were not presented to the circuit court, go to the substance of the appeal, and any impropriety due to adding documents not included in the record below should be addressed by striking those documents, not dismissing the appeal. Thus, we will deny the motion to dismiss.

We will address, however, the motion to strike two documents in the appendix that were not presented to the circuit court, i.e., a letter and the complaint in the prior case. With respect to the letter, Franklin contends that, because "[t]he letter was specifically referred to in Franklin's Motion to Vacate, which is part of the Record," it is appropriate for this Court "to take judicial notice of the letter." Regarding the complaint, Franklin argues that "[Mr.] Nefflen's Complaint in this action references the filing of the first Nefflen lawsuit and attaches the Settlement Agreement from that case," and therefore, "[t]his Court may properly take judicial notice" of these court documents. We disagree.

Maryland Rule 8–413 provides in pertinent part, as follows:

> The record on appeal shall include (1) a certified copy of the docket entries in the lower court, (2) the transcript required by Rule 8-411, and (3) all original papers filed in the action in the lower court except a supersedeas bond or alternative security and those other items that the parties stipulate may be omitted.

Md. Rule 8–413(a) ("Contents of record"). As this Court has noted, "an appellate court must confine its review to the evidence actually before the trial court when it reached its decision." *Cochran v. Griffith Energy Service Inc.*, 191 Md. App. 625, 663, 993 A.2d 153, *cert. denied*, 415 Md. 115, 999 A.2d 179 (2010). "Parties to an appeal are 'not entitled to supplement the record....'" *Id.* at 662–63, 993 A.2d 153 (quoting *Rollins v. Capital Plaza Assocs., LP*, 181 Md.App. 188, 200, 955 A.2d 869 (2008)). Accordingly, we grant Mr. Nefflen's motion to strike the letter and the complaint from the appendix to Franklin's initial brief.

## II.

On the merits, Franklin asserts that it appeals from "two separate decisions by the Circuit Court: the judgment itself and the denial of Franklin's Motion to Vacate." We will address Franklin's contentions regarding each of these decisions, in turn.

## A.

### Entry of Default Judgment

■ Franklin initially contends that the circuit court "erred in granting [Mr.] Nefflen judgment as to his claims for defamation and violations of the MCDCA and the MCPA because his Complaint does not plead legally viable claims." It argues that, "where the factual allegations contained in the Complaint do not establish liability, a default judgment is inappropriate," and here, the court abused its discretion in granting a default judgment "where the determination as to liability [could not] be made." Mr. Nefflen disagrees, arguing that Franklin's "effort to relitigate the issue of liability ... is contrary to the Maryland Rules."

Maryland Rule 2–613 sets forth the procedure for default judgments, in pertinent part, as follows:

(b) **Order of default.** If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

(c) **Notice.** Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(d) **Motion by defendant.** The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(e) **Disposition of motion.** If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(f) **Entry of judgment.** If a motion was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(g) **Finality.** A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted.

The Court of Appeals has noted that "a default judgment should be treated as an admission of liability." *Porter Hayden Co. v. Bullinger,* 350 Md. 452, 472, 713 A.2d 962 (1998). In *Curry v. Hillcrest Clinic,* 337 Md. 412, 434, 653 A.2d 934 (1995), the Court explained the function of default judgments as follows:

In Maryland a default judgment is considered more akin to an admission of liability than to a punitive sanction. In *Hopkins v. Easton Nat'l Bank,* 171 Md. 130, 134 [187 A. 874] (1936), this Court said that a default results in "the tacit admission by the defendant in default of the truth of the allegations of the bill of complaint as they are averred." In *Pacific Mortgage & Inv. Group, Ltd. v. Horn,* 100

Md.App. 311, 332 [641 A.2d 913] (1994), [this Court] stated that "[a] judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint." And finally, in *Gotham Hotels, Ltd. v. Owl Club, Inc.*, 26 Md.App. 158, 173 [337 A.2d 117] (1975), the [C]ourt held that "failure to plead ... constituted an admission ... of liability for the cause of action set forth in the declaration."

Franklin contends, however, that "it is an abuse of discretion for a court to grant a default judgment where a determination as to liability cannot be made." In support, it relies on federal cases interpreting Rule 55 of the Federal Rules of Civil Procedure to require the court to determine whether the complaint states a legitimate cause of action before entering a default judgment.[2] *See Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed.Appx. 860, 863 (11th Cir.2007) ("[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint ... actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."); *Balt. Line Handling Co. v. Brophy*, 771 F.Supp.2d 531, 540 (D.Md.2011) (Court must "consider whether the unchallenged facts constitute a legitimate cause of action.") (quoting 10A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688).

---

**2.** Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the clerk has entered a default, the plaintiff may seek a default judgment. FED.R.CIV.P. 55(b). If the claim does not include "a sum certain or a sum that can be made certain by computation,"

The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
  (A) conduct an accounting;
  (B) determine the amount of damages;
  (C) establish the truth of any allegation by evidence; or
  (D) investigate any other matter.
*Id.*

In Maryland, however, there is no such requirement. We find no support for Franklin's contention that a prerequisite to the entry of a default judgment, in the absence of any pleadings from the defaulting party, is that the trial court make a determination as to liability.

One significant difference between the Maryland rule and the federal rule is that Md. Rule 2–613(d) provides an opportunity for the defendant to move to vacate an order of default and explain the legal and factual basis for any defense of the claim. If the defendant does so, the court must then determine whether "there is a substantial and sufficient basis for an actual controversy as to the merits of the action," and whether "it is equitable to excuse the failure to plead." Rule 2–613(e). This is the defendant's opportunity to have the court assess the viability of the legal claims.

If the defendant does not file a motion to vacate the order of default, Rule 2–613(f) provides:

> [T]he court, upon request, *may enter a judgment* by default that includes a determination as to liability and all relief sought, *if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed.* If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(Emphasis added). The Court of Appeals has indicated that these two findings are sufficient to enter a default judgment. *See Carter v. Harris,* 312 Md. 371, 374, 539 A.2d 1127 (1988) ("If there is no vacation of the default order, the court 'may enter a judgment by default' providing it is satisfied that it has personal jurisdiction and that the requisite notice has been mailed."); *Adams v. Mallory,* 308 Md. 453, 460, 520 A.2d 371 (1987) (a court " 'may enter a judgment by default if it is

satisfied' concerning its jurisdiction and the mailing of a required notice.").[3]

In this case, where Franklin did not move to vacate the order of default, Franklin's argument that the circuit court erred in granting judgment in Mr. Nefflen's favor because his complaint did not plead legally viable claims is without merit. The circuit court did not err in granting a default judgment against Franklin.

## B.

### PostJudgment Motion

■ We turn next to Franklin's contention that the court erred in denying its subsequent motion to alter or amend the judgment. In its Motion for New Trial or to Alter or Amend Judgment, Franklin "move[d] the Court pursuant to Maryland Rule [2]–534 and [2]–535 to set this matter for a new hearing on damages or to alter or amend the judgment." In support, it made the following contentions:

> 6. Count I [of Mr. Nefflen's Complaint] alleges a violation of the MCDCA, Commercial Law Article § 14–201, *et. seq.* based upon [Franklin] claiming amounts due which have no legal or factual basis.... As the act complained of the Count I[sic] of the complaint, even if considered admitted, does not establish liability under the MCDCA, there is no basis to find that [Franklin] committed a violation of the MCDCA and there is no basis for the Court to award damages of $100,000.

---

3. This view also was espoused by the Maryland Rules Committee in their discussions regarding Rule 2–613. The Rules Committee Chairman contrasted the procedure for obtaining a default judgment under Rule 2–613 with the procedure for obtaining summary judgment, noting "that when there is an order of default, the plaintiff need only show that the defendant did not answer and there is jurisdiction over the matter." Court of Appeals Standing Committee on Rules of Practice and Procedure, Meeting Minutes at 23 (May 13, 1994). Alternatively, to obtain summary judgment "the plaintiff must *prove the right* to a summary judgment." *Id.* (emphasis added).

7. Count II of the Complaint alleges defamation by [Franklin] by knowingly, intentionally, and repeatedly publishing false and inaccurate information about [Mr. Nefflen] to third parties with the intent to injure [Mr. Nefflen]. As to Count II, [Mr. Nefflen], by counsel, since May of 2010 has been in possession of proof of the credit reporting done by Franklin Credit as to [Mr. Nefflen]'s account. Despite being provided with the credit reporting materials showing that Franklin was not reporting false and inaccurate information, it appears [Mr. Nefflen] went before this Court and asserted otherwise. As [Mr. Nefflen] was aware that Franklin was not publishing false and inaccurate information and did not disclose this information before the Court when seeking damages, Franklin submits that the damages requested at the damages hearing were not requested in good faith.

8. Additionally, a defamation cause of action does not accrue when wrongful statements are made to a credit reporting agency, but instead accrue when [Mr. Nefflen] is denied a credit account on the basis of those statements. *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397, 412 A.2d 1240 (1980). As there is no allegation in the Complaint that [Mr. Nefflen] was denied a credit account on the basis of any statements made by Franklin; there was no basis to find Franklin liable for defamation and to award damages of $100,000.00.

9. Count III of the Complaint alleges that [Franklin] violated the MCPA, Commercial Law Article, § 13–301(14)(iii). Commercial Law Article, § 13–301(14)(iii) states that it is a deceptive and unfair trade practice to violate Commercial Article, § 14–201, *et seq.*, or the MCDCA. As detailed above in paragraph 6, the Complaint, even if the facts are taken as true, fails to establish liability for a violation of the MCDCA as the act complained of is not covered or prohibited by the MCDCA. As there is no liability pursuant to the MCDCA, there can be no liability pursuant to the MCPA. Without liability under the MCPA being established by the Complaint, there was no basis for

damages to be assessed against Franklin in the amount of $100,000.00 for a violation of the MCPA.

10.  Based on the above, Franklin submits that the Order of Judgment should be amended by vacating the damages in the amount of $100,000.00 for defamation and vacating the damages in the amount of $100,000.00 for violations of the MCDCA and MCPA.

In his opposition to Franklin's motion, Mr. Nefflen argued that each of Franklin's contentions were without merit. With respect to Franklin's assertion that it had ceased all negative credit reporting, Mr. Nefflen contended that Franklin had agreed to not only "stop reporting false information … but also [to] delete all false past derogatory information" from his credit reports, and that it had "continued to falsely report that Mr. Nefflen had a history of late payments." Mr. Nefflen also contended that Franklin's legal arguments regarding its liability under the MCDCA and for defamation were meritless.

The circuit court denied Franklin's motion. It stated as follows: "Upon consideration of [Franklin's] Motion to Vacate or for other relief, [Mr. Nefflen's] response thereto and the pleadings, exhibits, orders and other papers in this record, the court finds that the Motion should be denied."

Franklin contends that the circuit court abused its discretion in denying its motion to alter or amend the judgment on two grounds. First, it reasserts its claim that the judgment was erroneous as a matter of law. Second, it asserts that "Maryland law dictates that it is an abuse of discretion to deny a motion to vacate where a party intends to defend a case and can offer meritorious defenses, but fails to do so by an honest mistake."

Mr. Nefflen argues that the circuit court did not abuse its discretion in denying Franklin's post-judgment motion. He contends that Rule 2–613(g) specifically provides that "default judgments are not subject to the [court's] revisory power under Rule 2–535(a) [4] except as to relief granted," noting that

─────────

4.  Rule 2–535(a) provides as follows:

the Rule "does not permit relitigation of liability." Although he suggests that Rule 2–534 vests the court with discretion to alter or amend a judgment it has already entered,[5] Mr. Nefflen argues that the court did not abuse its discretion in denying the motion because the evidence presented at the hearing was sufficient to support his claims, and to the extent that Franklin raises claims in this Court that were not raised below, they should not be addressed.

It is clear that Franklin cannot revisit the issue of liability with a motion to revise pursuant to Rule 2–535(a). Rule 2–613(g) provides: "A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted." This Court has explained that, unlike an order of default, which is "interlocutory in nature and can be revised by the court at any time up until the point a final judgment is entered," a default judgment is a final judgment for which the court's revisory power is limited. *Bliss v. Wiatrowski*, 125 Md.App. 258, 265, 724 A.2d 1264, *cert. denied*, 354 Md. 571, 731 A.2d 970 (1999). *Accord Wells v. Wells*, 168 Md.App. 382, 393, 896 A.2d 1082 (2006) ("[W]hen a default judgment is entered, the court retains the broad revisory power only 'as to the relief granted.'"); *Holly Hall Publ'n, Inc. v. County Banking and Trust Co.*, 147 Md.App. 251, 259 n. 6, 807 A.2d 1201, *cert. denied*, 371

On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment, and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. A motion filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

5. Rule 2–534 provides in pertinent part, as follows:

In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial.

Md. 614, 810 A.2d 961 (2002) ("a default judgment is not subject to the revisory power under 2–535(a), except as to the relief granted.").

We explained the rationale for this principle in *Wells*, 168 Md.App. at 393, 896 A.2d 1082, noting: "Because the defendant has an opportunity, under section (d) of Rule 2–613, to vacate the order of default that, in effect, is an adverse finding on liability, the defendant does not enjoy the same opportunity once the default judgment is entered." *Accord Curry*, 337 Md. at 427, 653 A.2d 934 (the court's revisory power is limited once a default judgment is entered " 'to avoid giving the defendant in default two opportunities to set [the judgment of liability] aside.' ") (quoting P. NIEMEYER & L. SCHUETT, MARYLAND RULES COMMENTARY 473 (2d ed. 1992)).

Franklin appears to acknowledge this authority, but it argues that "[i]t is well settled that a Rule 2–534 Motion to Vacate a default judgment can assert meritorious defenses going to the liability of the claims." It cites no authority for this proposition, and we have found none. In fact, this Court has interpreted the Rule 2–613(g) limitation on the court's ability to revisit the issue of liability through a Rule 2–535(a) revisory motion to apply as well to a motion to alter or amend pursuant to Rule 2–534. *See Wells*, 168 Md.App. at 393, 896 A.2d 1082 (interpreting 2–613(g) as limiting the court's revisory power under both 2–535(a) and 2–534 "to the relief granted") (quoting Md. Rule 2–613(g)); *Das v. Das*, 133 Md.App. 1, 22, 754 A.2d 441 ("Rule 2–613(g) expressly provides that default judgments are not subject to the broad revisory powers of Rules 2–534 and 2–535(a) except as to the relief granted."), *cert. denied*, 361 Md. 232, 760 A.2d 1106 (2000).

Although generally it is true that a court should apply its discretion to alter or amend a judgment pursuant to Rule 2–534 "liberally [so that] a technicality [does not] triumph over justice," *Williams v. Housing Authority of Baltimore City*, 361 Md. 143, 153, 760 A.2d 697 (2000) (citations omitted), in the context of default judgments, this discretion is expressly circumscribed by Rule 2–613(g) to the relief granted. Frank-

lin's argument on appeal, however, is limited to liability; it argues that the circuit court abused its discretion in failing to grant the motion to alter or amend because the complaint did not state a basis for liability. Because the issue of liability was not subject to review after the default judgment was entered, the circuit court properly denied the motion to alter or amend.

**MOTIONS TO DISMISS AND TO STRIKE BRIEF DENIED. MOTION TO STRIKE PORTIONS OF THE APPENDIX GRANTED. JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**