81 A.3d 441

FRANKLIN CREDIT MANAGEMENT CORPORATION

v.

Fred NEFFLEN.

No. 32, Sept. Term, 2013.

Court of Appeals of Maryland.

Dec. 20, 2013.

Jason C. Rose (Nathaniel S. Berry and Venable LLP, Baltimore, MD), on brief, for Petitioner.

Scott C. Borison (Legg Law Firm, LLC, Frederick, MD), on brief, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and DALE R. CATHELL (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

In this case we initially are asked to consider whether a defendant who fails to respond to a complaint and against

whom an order of default is entered and fails to move to vacate the order of default, after which judgment of default is entered may, thereafter, contest liability either by moving, under Maryland Rule 2–534 to alter or amend a judgment or directly on appeal.[1]

The dispute before the Court arises out of a suit alleging the breach of a settlement agreement terminating litigation in the Circuit Court for Frederick County that earlier ensued between the Petitioner, Franklin Credit Management Corporation (Franklin), and the Respondent, Fred Nefflen. The original litigation arose when Franklin was assigned the servicing rights to Mr. Nefflen's mortgage on a piece of property located in Frederick, Maryland. According to Mr. Nefflen's Complaint, Franklin attempted to collect more than was due on the loan as well as notified credit reporting agencies that Mr. Nefflen's payments were past due. Mr. Nefflen, thereafter, sued Franklin, and the settlement terms, as reflected in an agreement signed between Franklin and Mr. Nefflen, provided in relevant part:

> 7. The parties agree that there shall be no demand or requirement for flood insurance of any kind in connection with the Nefflen Loan.

> 8. The parties agree that there shall be no escrow requirement for the Nefflen Loan. Nefflen, upon request made

---

1. All references to the Maryland Rules are to the Maryland Rules (2010), which were in effect at the time the default judgment was entered. Rule 2–534, entitled "Motion to alter or amend a judgment— Court decision," provided and continues to provide, in relevant part:

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

through counsel, shall promptly provide [Franklin] with proof of payment of taxes and insurance.

*   *   *

11.   [Franklin] will delete all derogatory information from any Credit Reports and report the Nefflen Loan as current and paid as agreed.

According to the Complaint, Franklin violated those provisions; Mr. Nefflen alleged breach of contract, defamation, as well as violations of the Maryland Consumer Debt Collection Act [2] and the Maryland Consumer Protection Act [3]:

### COUNT I

Violation of the Maryland Consumer Debt
Collection Act ("MCDCA")

*  *  *

40.   Defendant has repeatedly made claims that Plaintiff owes amounts due to Defendant.  The claims have no legal or factual basis.

41.   Defendant has engaged in acts that violate the MCDCA. . . .

---

**2.**   The Maryland Consumer Debt Collection Act, at the time Mr. Nefflen's claim was filed, appeared in Sections 14–201 *et seq.* of the Commercial Law Article, Maryland Code (1975, 2005 Repl. Vol., 2009 Supp.), and in relevant part, prohibited a collector from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md.Code (1975, 2005 Repl. Vol., 2009 Supp.), § 14–202 of the Commercial Law Article. The Maryland Consumer Debt Collection Act continues to be found at Sections 14–201 *et seq.* of the Commercial Law Article and remains unchanged.

**3.**   The Maryland Consumer Protection Act, at the time Mr. Nefflen's claim was filed, appeared in Sections 13–101 *et seq.* of the Commercial Law Article, Maryland Code (1975, 2005 Repl. Vol., 2008 Supp.). Specifically, Mr. Nefflen asserted a violation of Section 13–301(14)(iii) of the Commercial Law Article, which provided that a violation of the Consumer Debt Collection Act was a violation of the Consumer Protection Act. The Maryland Consumer Protection Act continues to be found at Sections 13–101 *et seq.*, and Section 13–301(14)(iii) remains unchanged.

42. The Defendant's repeated and wrongful acts have caused the [P]laintiff emotional distress.

## COUNT II

### Defamation

\* \* \*

44. The [D]efendant has defamed the [P]laintiff by knowingly, intentionally and repeatedly publishing false and inaccurate information about the [P]laintiff to third parties who reasonably recognize the information is defamatory with the intent to injure the [P]laintiff.

45. The Defendant acted with malice against the Plaintiff.

46. Plaintiff has been damaged by the defendant[']s actions.

## COUNT III

### Violation of the Maryland Consumer Protection Act ("MCPA")

\* \* \*

48. The Defendant's violations of the MCDCA constitutes a violation of the Maryland Consumer Protection Act pursuant to § 13–301(14)(iii) of the Commercial Law Article.[4]

---

4. Section 13–301 provided:
   Unfair or deceptive trade practices include any:
   
   \*      \*      \*
   
   (14) Violations of a provision of:
   
   \*      \*      \*
   
   (iii) Title 14, Subtitle 2 of [the Commercial Law] article, the Maryland Consumer Debt Collection Act[.]
   Md.Code (1975, 2005 Repl. Vol., 2008 Supp.), § 13–301(14)(iii) of the Commercial Law Article. The language remains the same.

## COUNT IV

### Breach of Settlement Agreement

\* \* \*

50. Defendant has materially breached the terms of the settlement agreement that it entered into with the Plaintiff.

51. Plaintiff has suffered damages as a result of the Defendant's breach of contract.

Approximately five months after the Complaint was served on Franklin, Mr. Nefflen moved for an entry of an order of default, pursuant to Rule 2–613(b),[5] asserting that Franklin

---

**5.** Rule 2–613, pertaining to default judgments, provided, at the time the judgment was entered, and also today, that:

(a) **Parties to whom applicable.** In this Rule, the term "plaintiff" includes counter-plaintiffs, cross-plaintiffs, and third-party plaintiffs, and the term "defendant" includes counter-defendants, cross-defendants, and third-party defendants.

(b) **Order of default.** If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. The request shall state the last known address of the defendant.

(c) **Notice.** Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(d) **Motion by defendant.** The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(e) **Disposition of motion.** If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(f) **Entry of judgment.** If a motion was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the

had failed to respond to the complaint in any way. An order of default was entered against Franklin:

### ORDER OF DEFAULT

The Motion for Entry of an Order of Default in the above captioned matter having been read and considered, it is thereupon this 5th day of October, 2010 by the Circuit Court for Frederick County, Maryland,

ORDERED, that an Order of Default be and it is hereby entered in favor of the Plaintiff and against the Defendant.

Franklin was notified by the clerk of the court of its default, more specifically that:

You are hereby notified that an Order of Default has been entered against you in the above entitled case on 10/06/10.

You may move to vacate the Order of Default within (30) Days of the date of entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

Despite the notice, Franklin never responded in any way.[6] The clerk, thereafter, sent a "Notice of Hearing/Trial" to Franklin, notifying it that a default hearing was scheduled for March 8, 2011, which was postponed upon motion by Mr.

---

amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(g) **Finality.** A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted.

6. In the proceedings below, Franklin never asserted any basis for failing to plead or to respond to the notice of the order of default. In its brief presented to this Court, however, Franklin's counsel asserted that, "[a]lthough [Franklin's attorney in the trial court] was aware that the lawsuit had been filed, he mistakenly believed that Franklin had not been properly served with the complaint and never entered an appearance in the matter or filed an answer on behalf of Franklin." No motion to dismiss for insufficient service of process under Rule 2–322(a) was filed, however.

Nefflen; the hearing was rescheduled for April 7, 2011, and a notice of the change of date also was sent to Franklin.

On April 7, 2011, Judge Julie S. Solt of the Frederick County Circuit Court held a hearing on the issue of Mr. Nefflen's damages. Franklin failed to appear. Mr. Nefflen presented copies of his credit reports obtained from Equifax [7] and Transunion,[8] which reflected that the adverse credit information with respect to the Franklin loan continued to appear on the report six months after the parties entered into the settlement agreement; mortgage statements reflecting escrow payments; and letters from Franklin to Mr. Nefflen demanding that he obtain flood insurance. Mr. Nefflen also testified at the hearing and expounded on the damages he suffered, including his inability to purchase a car because of the negative credit reporting and the emotional and physical effects of Franklin's actions on him and his family, such as "a lot of sleepless nights," stomach problems, and that his "nerves [were] practically shot."

At the conclusion of the hearing, Judge Solt made findings of fact and ruled that Franklin was in breach of the settlement agreement:

I find the following facts. I find obviously by default that there has been a breach by Franklin Credit of the settlement agreement that was attached as, to the complaint that specifically in that settlement agreement that Franklin Credit indicated that they would remove any requirement for the Plaintiff to have flood insurance on his property. That within weeks of signing the settlement agreement that Franklin Credit breached that settlement contract by re-

---

7. Equifax is a global credit reporting corporation that provides a number of services, including providing credit reports to individual consumers. *Equifax,* http://www.equifax.com/home/en_us (last visited Dec. 19, 2013).

8. Transunion is a global corporation that provides "credit information and information management services." Among its services, it provides credit reports to consumers. *Who We Are,* http://www.transunion.com/corporate/about-transunion/whoweare.page (last visited Dec. 19, 2013).

quiring and requesting that the Plaintiff obtain flood insurance on the property despite their agreement only weeks earlier not to require that and that they ultimately have taxed his account with $1,650.92 on two different occasions representing flood insurance, which by their agreement they indicated that the Plaintiff did not owe. They also have added, and that comes to $3301.84. They also breached the settlement agreement which indicated there was to be no escrow to be attached to the Plaintiff's account. That despite their settlement agreement they began requesting $700, 700 plus dollars per month.

Judge Solt also awarded Mr. Nefflen damages on his claims for defamation and violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act:

I also find that it is a clear violation of the Maryland Consumer Credit Reporting Act and that the Plaintiff has suffered damage in mental anguish, sleepless nights, anxiety, and the ability, inability to get appropriate credit merely because of the negative credit reporting by Franklin, which they agreed to remove from his credit reports, and that the Plaintiff is entitled to damages under that count in the amount of $100,000. I also find that he has slandered Mr. Nefflen's good name. In looking at these reports, again, the only information to a negative account is Franklin Credit and that is quite frankly because of them not providing the necessary assurances to the credit reporting agencies which they agreed to do, and by putting negative references on for non-payment I'm assuming of the obligations that they agreed he didn't owe in the first place, and quite frankly that's outrageous and I find that the Plaintiff is entitled to damages in that instance to $100,000 . . . . [O]n count three, which is the Consumer Protection, that's really covered for the damages in count one and with respect to attorneys' fees those were authorized under count four pursuant to the settlement agreement. So total damages are . . . $203,301.84 plus attorneys' fees to be submitted, plus costs of this suit. Judge Solt, thereafter, issued a default judgment in the amount of $203,301.84, a copy of which was sent to Franklin.

Franklin, then, filed a "Motion for a New Trial or to Alter or Amend Judgment," pursuant to Rule 2–534,[9] requesting that the default judgments be set aside because, according to Franklin, the claims were legally deficient,[10] and, in its view, "[w]hile the facts in the complaint may be deemed admitted due to default, the Court must still make a determination as to liability and there must be satisfactory proof of damages." Mr. Nefflen filed an opposition to the motion to alter or amend the judgment, refuting the contention that his claims were legally deficient. Judge Solt denied the motion for a new trial or to alter or amend the judgment, and Franklin filed a timely notice of appeal to the Court of Special Appeals.[11]

---

**9.** In its motion, Franklin initially stated it was filed pursuant to Maryland Rules 3–534 and 3–535. These Rules, however, were cited in error as Title 3 of the Maryland Rules is applicable to actions filed in the district court. The motion later, however, cited appropriately to Rules 2–534 and 2–535.

**10.** Specifically, with respect to the Maryland Consumer Debt Collection Act claim, Franklin alleged that "claiming amounts due which have no legal or factual basis," is not prohibited by the Act. Likewise, because the Maryland Consumer Protection Act claim was predicated solely on a violation of the Maryland Consumer Debt Collect Act claim, Franklin asserted that it too must fail. Concerning the defamation claim, Franklin argued that, "a defamation cause of action does not accrue when wrongful statements are made to a credit reporting agency, but instead accrues when the Plaintiff is denied a credit account on the basis of those statements," and that, because there was no allegation that Mr. Nefflen was denied credit, the defamation claim was also legally insufficient.

**11.** The questions presented to the Court of Special Appeals were:

1. Did the Circuit Court err as a matter of law or abuse its discretion in granting Nefflen a default judgment for his defamation claim because the failure to correct a negative credit report does not constitute a viable claim for defamation or, alternatively, because the defamation claim was not viable in the absence of factual allegations to support that Franklin acted with malice or intent to harm Nefflen?
2. Did the Circuit Court err as a matter of law or abuse its discretion in granting Nefflen a default judgment for violations of the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act because Franklin's request for verification that Nefflen had flood insurance in accordance with federal requirements was not

In a reported opinion, the Court of Special Appeals affirmed the trial court's decision, concluding that the judge did not abuse her discretion when she entered the default judgments, reasoning that, in Maryland there is no "prerequisite to the entry of a default judgment, in the absence of any pleadings from the defaulting party, . . . that the trial court make a determination as to liability." *Franklin Credit Mgmt. Corp. v. Nefflen*, 208 Md.App. 712, 728, 57 A.3d 1015, 1024 (2012). With respect to the decision to deny the Rule 2–534 motion to alter or amend the judgment, the intermediate appellate court opined that "[i]t is clear that Franklin cannot revisit the issue of liability", reasoning that Rule 2–613(g), which limits the court's "revisory power under Rule 2–535(a) [12] . . . to the relief granted," was equally applicable to Rule 2–534 based on the intermediate appellate court's prior decisions in *Wells v. Wells*, 168 Md.App. 382, 896 A.2d 1082 (2006) and *Das v. Das*, 133 Md.App. 1, 754 A.2d 441 (2000), and its interpretation of Rule 2–613(g)'s purpose, which, it opined, is to prevent a defaulting defendant from having two opportunities to set

an attempt to collect a debt owed to Franklin or, alternatively, because Franklin's request constituted a breach of a Settlement Agreement, not a tort under the Maryland Consumer Debt Collection Act?

3. Did the trial court abuse its discretion in denying Franklin's Motion to Alter or Amend the Judgment where Franklin's Motion established that Nefflen did not plead viable claims and that the judgment was erroneous as a matter of law?

4. Did the trial court abuse its discretion in denying Franklin's Motion to Alter or Amend the Judgment where Franklin's failure to defend was the result of a misunderstanding regarding the timing of the default judgment hearing and where Franklin's Motion raised meritorious defenses?

12. Rule 2–535(a) provided, at the time that the default judgment was entered, and continues to provide, that:

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. A motion filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

aside the order of default. *Franklin Credit Mgmt. Corp.*, 208 Md.App. at 732–33, 57 A.3d at 1027–28. Because Rule 2–534 did not permit a revisiting of liability once a default judgment was entered, the Court of Special Appeals reasoned the trial court properly denied the motion. *Id.* at 733–34, 57 A.3d at 1028.

Franklin, then, petitioned this Court for certiorari, which we granted, to consider the following questions, which we have renumbered:

1. Does Rule 2–613(g) permit a circuit court to revisit a defendant's liability through a Rule 2–534 motion to alter or amend a default judgment?

2. Is it error or an abuse of discretion for a circuit court to enter a default judgment under Rule 2–613(f) where the complaint or the evidence the court considers at a default judgment hearing establishes that a plaintiff's claims are legally invalid? [13]

*Franklin Credit Mgmt. v. Nefflen*, 431 Md. 219, 64 A.3d 496 (2013).

Rule 2–613 defines the process for entry of a default judgment, which involves the entry of an order of default followed by notice to the defendant and an opportunity to vacate the default order, in the absence of which the court can enter a default judgment:

(a) **Parties to whom applicable.** In this Rule, the term "plaintiff" includes counter-plaintiffs, cross-plaintiffs, and third-party plaintiffs, and the term "defendant" includes counter-defendants, cross-defendants, and third-party defendants.

(b) **Order of default.** If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall

---

**13.** We do not reach the second question posed by Petitioner because of our holding herein that a failure to move to vacate the order of default vitiates any appeal from a default judgment in which liability is questioned.

enter an order of default. The request shall state the last known address of the defendant.

(c) **Notice.** Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

(d) **Motion by defendant.** The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

(e) **Disposition of motion.** If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

(f) **Entry of judgment.** If a motion was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed. If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

(g) **Finality.** A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted.

Prior to 1984 when the present rule was enacted, a judge could enter a default judgment when a defendant failed to "comply with the requirements as to time allowed for plead-

ing," Rule 310 b (1983),[14] after which notice was sent to the defendant. Rule 611 (1983).[15] The default judgment was a determination of liability and also was a final judgment from which an appeal could have been taken, pursuant to Section 12–301 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1980 Repl. Vol.), even if damages had not been determined. *See Himes v. Day,* 254 Md. 197, 254 A.2d 181 (1969). A defaulting defendant also could have moved to set aside the judgment of default under former Rule 625 (1983),[16] which permitted the court to exercise its revisory power over the judgment for a period of thirty days. *See Eshelman Motors Corp. v. Scheftel,* 231 Md. 300, 189 A.2d 818 (1963). After a default judgment was entered, the court, upon motion by the plaintiff, could have conducted an "inquisition"

---

**14.** Former Rule 310 b (1983) provided:

*By Party Against Whom Claim is Asserted.*

If a party against whom a claim is asserted is in default for failure to comply with the requirements as to time allowed for pleading, unless the time be enlarged by the court for good cause shown, judgment may be entered against him in an action at law or the bill may be taken pro confesso in a proceeding in equity, on motion of the adverse party, and thereupon the case shall proceed ex parte as against such party.

**15.** Former Rule 611(1983) provided:

**Judgment by Default—Notice**

Upon the entry of judgment by default or decree pro confesso, pursuant to Rule 310 b or Rule 610 c 3, for failure to plead in response to original process, the clerk shall mail fortwith, notice thereof to the defendant at his address, if any, specified in the pleadings and shall note such fact on the docket or case file. If no address is specified and the address is otherwise unknown, this Rule shall not apply. The notice sent by the clerk shall follow the form set forth in the Appendix of Forms.

**16.** Former Rule 625 (1983) provided in pertinent part:

**Revisory Power of Court Over Judgment.**

a. *Generally.*

For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity.

Rule 625 was replaced by current Rule 2–535.

to determine damages.  Rule 648 (1983).[17]  A defaulting defendant could have taken a separate appeal from the assessment of damages, but it was only permitted to appeal issues of remedy, and not of liability.  *See, e.g., Millison v. Ades of Lexington, Inc.*, 262 Md. 319, 328, 277 A.2d 579 (1971).

In *Millison*, we had occasion to discuss the effect of having a two judgment process under the old rules.  Ades of Lexington (Ades), a corporate tenant of Patuxent Development Company (Patuxent), sued Patuxent and its President, Millison, for, *inter alia*, failing to make necessary repairs, and after Millison and Patuxent failed to file a timely answer, Ades obtained a judgment by default, pursuant to former Rule 310 b.  Millison and Patuxent moved to set aside the default judgment, but their motion was denied by the court, and ultimately, a jury awarded Ades damages in the amount of $33,416.59.  On appeal, Millison and Patuxent attempted to attack liability on the basis of an exculpatory clause, which allegedly defeated Ades's claims.  We, however, refrained from addressing liability, opining that, "[a] judgment by default, while it may require extension by way of proof of damages, Rule 648, is still final in respect of the question of the liability of the party against whom it is obtained," and accordingly we could not "go behind the judgment by default to examine into and determine upon the validity of the cause

---

**17.**  Former Rule 648 (1983) provided:

**Inquisition—After Interlocutory or Default Judgment**

Where an interlocutory judgment or judgment by default has been entered, the court shall on motion of the plaintiff, make an order in the nature of a writ of inquiry, to charge the jury to inquire of the damages and costs sustained by the plaintiff, which inquiry shall be made and the evidence given in open court as in other jury trials; and after the jury shall have considered thereof, they shall return their inquisition and the court shall order such judgment to be extended in accordance with the terms of such finding of the jury; or, on motion by the plaintiff, the court where such judgment is, shall without the jury, inquire of the damages and costs sustained by the plaintiff in such action, and shall assess the damages and costs and order the judgment to be extended for the amount so found to be due, and interest.

of action upon which suit is instituted[.]" *Id.* at 328, 277 A.2d at 584 (citations omitted).

In 1981, however, the Standing Committee on Rules of Practice and Procedure (Rules Committee) recommended a retooling of the dual default judgment process under a single Rule, Rule 2–613. The recommendation was for a process under which an "order of default," rather than a "default judgment," first would be entered against a defendant who failed to timely plead, after which notice to the defendant of the entry of the order would be provided, along with an opportunity to vacate, which if denied, would lead to an assessment of damages and then the entry of the default judgment by the court. An explanatory note accompanying the proposed Rule explained:

> This Rule provides a two-stage process for default judgments. The first stage involves a determination evidenced by an order, that the defendant is in fact in default. The defendant is given notice of this determination and an opportunity to have the order of default vacated. When seeking to vacate the order the defendant must convince the court that the defendant has a meritorious defense and that there is good cause to excuse the defendant's failure to plead.
>
> The second stage, the actual entry of the judgment, takes place only after the order of default may no longer be vacated by the trial court. This will avoid the necessity for courts to undertake fact finding processes to produce an amount for the default judgment only to have the judgment vacated upon a showing that the defendant had good cause for failing to plead.

Minutes of the Standing Committee on Rules of Practice and Procedure, November 21, 1981, at 14–15.[18] According to a

---

18. The two-step default judgment recommendation from the Rules Committee followed rejection of a proposed rule similar to Federal Rule of Civil Procedure 55, which provided in relevant part:

    (a) ENTRY. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by

letter written by Albert D. Brault, a member of the Rules Committee, at that time, an "order" of default was to replace a "judgment" by default to reflect a change in appealability:

Neither litigants nor the Court want to go through the difficulties associated with inquisition, only to find the judgment set aside after inquisition. . . . This is what we accomplish with proposed Rule 2–613. The difficulty in doing it this way was that the first default judgment, under 310(b), *could not be called a judgment, since it would not fit with the definition of judgment under the proposed rules.* We

these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

(b) JUDGMENT. Judgment by default may be entered as follows:

(1) *By the Clerk.* When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if he has been defaulted for failure to appear and if he is not an infant or incompetent person.

(2) *By the Court.* In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

(c) SETTING ASIDE DEFAULT. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b). Fed.R.Civ.P. 55 (1984). Under this Rule, there was no notice and an opportunity to vacate the initial entry of default; rather, a defaulting defendant could set aside the entire judgment after the court entered it. The Rules Committee, however, believed that it would be "a waste of the court's time to require an inquisition if the judgment will be vacated at a later date. . . ." Minutes of the Standing Committee on Rules of Practice and Procedure, Oct. 17, 1981, at 36.

have therefore referred to the first phase as an "order of default".

Letter from Albert D. Brault to the Hon. Perry G. Bowen (May 23, 1983) (emphasis added) (on file with Rules Committee).

Rule 1–201, which was adopted by the Court, defined a judgment as "any order of court final in its nature", Eighty-second Report of the Standing Committee on Rules of Practice and Procedure, 10 Md. Reg. 10, 5–7 (May 13, 1983); because damages remained undetermined at the time an order of default was entered, it was not "final." Rule 2–613 then was intended to avoid the "piecemeal appeal" issue that arose under the former rules by which the defaulting defendant could take an appeal from both the determination of liability and damages, because "no appeal may be taken from the entry of an order of default." *Banegura v. Taylor*, 312 Md. 609, 618, 541 A.2d 969, 973 (1988).

We ultimately adopted the two-step framework[19] whereby under Rule 2–613(b), "the entry of an order of default [is] the initial step towards entry of default judgment." *O'Connor v. Moten*, 307 Md. 644, 647 n. 2, 516 A.2d 593, 594 n. 2 (1986), *abrogated by Bienkowski v. Brooks on other grounds*, 386 Md. 516, 873 A.2d 1122 (2005). "This order [of default] is a determination of liability...." *Id.; see also Montgomery Cnty. v. Post*, 166 Md.App. 381, 389, 888 A.2d 1224, 1229 (2005) ("If an order of default is entered, pursuant to Rule 2–613(b), the defaulting party has the right to move to vacate pursuant to subsection (d), and if the order of default remains, it is dispositive only as to liability."); *Wells*, 168 Md.App. at 393, 896 A.2d at 1089 ("[T]he order of default [is], in effect, ... an adverse finding on liability."). The determination of liability in the order, however, may be vacated upon motion of a defendant who has been provided notice[20] and files such

---

**19.** Court of Appeals of Maryland, Rules Order, 11 Md. Reg. 9 (Apr. 27, 1984).

**20.** The amendments to the pre–1984 default judgment framework enhanced the notice required to be sent to a defendant of its default and its opportunity to vacate that order:

within the thirty-day window, if the defendant can demonstrate an equitable reason for failure to plead and that there is an actual controversy on the merits. Rule 2–613(d)–(e). If the defendant fails to vacate the order of default or if the motion to vacate is denied, a court may proceed with the assessment of damages and the entry of a default judgment under Rule 2–613(f), which "includes a determination as to liability and all relief sought". The latter language was proposed by the Rules Committee and adopted by the Court in 1990 because litigants were attempting to appeal the order of default establishing liability prior to an assessment of damages:

> [S]ince the revised Rules of Procedure have been in effect, there has been a problem with the bar and the courts understanding the default procedure. In many cases, the two-step process requiring an order of default establishing liability and a determination of damages before a judgment is entered is not being followed. Appeals are being taken too early, the appellants assuming that the order determining liability is a judgment.

Minutes of the Standing Committee on Rules of Practice and Procedure, June 16/17, 1989, at 47. The amendment to Rule 2–613(f), thus, makes clear "that a 'judgment' by default cannot be entered on the issue of liability only. . . ." Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* (3d ed. 2003).

---

Section (b) [of Rule 2–613] alters prior practice regarding notice given to the defendant upon entry of an order of default. While the notice provisions of Former Rule 611 were mandatory, the clerk was not obligated to issue notice if the defendant's address was not specified in the pleadings and was otherwise unknown. Rule 2–613 seeks to insure that the defendant receives adequate notice of the order of default . . . [by] requir[ing] that the plaintiff's request [for an entry of an order of default to] include the defendant's last known address[;] [that] the clerk . . . issue notice to both the defendant and to the defendant's attorney of record, if any[; and] that the court can require that additional notice be given to the defendant if necessary. *Commentary on the New Maryland Rules of Civil Procedure*, 43 Md. L.Rev. 669, 830–31 (1984) (footnotes omitted).

Rule 2–613(g), originally enacted as Rule 2–613(f) in 1984,[21] also provides that "[a] default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted", thereby limiting any potential post-judgment challenge under Rule 2–535 to issues of remedy, but not liability. Rule 2–535, in relevant part, provided in (f), and later in (g), that:

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. A motion filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

The limitation on post-judgment motions is consistent with what the Rules Committee sought to achieve by recommending a two-step default judgment process to ensure that the court's time will not be wasted by "requir[ing] an inquisition [into damages] if the judgment will be vacated at a later date on the ground of excusable neglect." Minutes of the Standing Committee on Rules of Practice and Procedure, Oct. 17, 1981, at 36–37. Oft-quoted commentators about the Maryland Rules have opined that the use of a Rule 2–535 motion to contest liability goes against the purpose of Rule 2–613:

The defendant had one opportunity, for a period of 30 days following entry of the order, to file a motion to vacate the order of default. To give the defendant an opportunity to set aside the default under the revisory power of the court as well would give the defendant a second crack. With respect to the damage aspect of the judgment, however, the

---

**21.** Rule 2–613(f) became Rule 2–613(g) in 1997 when section (a) was added "to clarify that the rule applies when a counter-defendant, cross-defendant, or third-party defendant fails to plead within the time allowed by Rule 2–321." *See* Niemeyer & Schuett, *supra,* at 517.

defendant had no prior opportunity to argue that [the] portion of that judgment should be modified or revised. Niemeyer & Schuett, *supra*, at 520. Clearly, then, under Rule 2–613(g), Rule 2–535 motions are prohibited to challenge the order of default, i.e., liability.

█ The issue herein, however, is whether under Rule 2–534 a party can contest liability after a default judgment has been entered. Rule 2–534, entitled, "Motion to alter or amend a judgment—Court decision", provides:

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

Mr. Nefflen asserts, and the Court of Special Appeals held, that Rule 2–613(g) limits the court's revisory power over a default judgment under Rule 2–534 solely to the relief granted. Franklin argues, however, that such an interpretation is inconsistent with the plain meaning of Rule 2–613(g), which expressly limits a court's authority to revise the judgment to the relief granted pursuant to Rule 2–535, but contains no such limitation under Rule 2–534.

█ Although we agree that Rule 2–613(g) does not expressly refer to Rule 2–534, we disagree with Franklin as to the ability of a defendant to file a Rule 2–534 motion to alter or amend an order of default in order to contest liability. By its plain terms, Rule 2–534 is applicable to a "judgment," which has been defined as "any order of court final in its nature entered pursuant to [the Maryland Rules]." Rule 1–

202(*o*). An order is not final in nature unless "the court intends for it to be 'an unqualified, final disposition of the matter in controversy,'" *Frase v. Barnhart,* 379 Md. 100, 115, 840 A.2d 114, 122 (2003), quoting *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989), which we have interpreted to mean that the order "must be so final as to determine and conclude the rights involved, or deny the appellant the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *Schuele v. Case Handyman & Remodeling Servs., LLC,* 412 Md. 555, 571, 989 A.2d 210, 219 (2010) (citations and quotations omitted); *see also* Niemeyer & Schuett, *supra,* at 486 ("A judgment must dispose of the case at the trial level in a way that resolves in a final way the rights and claims of the parties in that court.").

An "order of default" is not "final in its nature," as it is not an "unqualified, final disposition of the matter," because an assessment of damages is required. Indeed, the very purpose of replacing default judgment under former Rule 310 b with an "order of default" was to ensure that no appeal can be taken at that time, as we recognized in *Curry v. Hillcrest Clinic, Inc.,* 337 Md. 412, 653 A.2d 934 (1995).

In *Curry,* the Plaintiff, Lydia T. Curry, filed a complaint with the Health Claims Arbitration Office (Arbitration Office) against Dr. Sheo P. Sharma and his employer, Hillcrest Clinic, Inc. (Hillcrest). Hillcrest failed to respond to the Complaint, and accordingly, pursuant to Rule 2–613,[22] an order of default was entered against it, which Hillcrest failed to move to vacate. The Arbitration Office purported to enter an "Order Entering Award by Default," but did not assess damages; it later determined that Dr. Sharma, was not liable for negligence, and accordingly, that Hillcrest was not liable under the

---

22. Section 3–2A–02(d) of the Courts and Judicial Proceedings Article, Maryland Code (1974, 2013 Repl. Vol.), provides that "[e]xcept as otherwise provided, the Maryland Rules shall apply to all practice and procedure issues arising under [the Health Care Malpractice Claims] subtitle."

doctrine of *respondeat superior.* Curry brought an action to vitiate the act of the Arbitration Office in nullifying the order entering the default. We, agreeing with the act of the Arbitration Office and the Circuit Court's affirmance, opined that the default "award" was not a judgment until damages had been assessed, citing Rule 2–613(e):

Consequently, Curry's "award of default" had no legal effect beyond reiterating that an order of default had been entered and that a motion to vacate the order of default had been denied. . . .

*Banegura v. Taylor,* 312 Md. 609, 541 A.2d 969 (1988), is dispositive. The defendant in that case had been served with a civil complaint alleging rape of the plaintiff. An order of default was entered in November 1984, and the notice of default sent by the clerk, but there was no response by the defendant. On January 4, 1985, at the request of the plaintiff, the court entered a "judgment" of default. Thereafter on February 4, 1985 the defendant moved to strike the default "judgment," but the motion was denied. A judgment for substantial damages was entered against the defendant, who appealed to the Court of Special Appeals. In an unreported opinion that court "dismissed the appeal as to the judgment by default, finding it untimely, and affirmed the judgment as to damages." This Court granted certiorari. Before us, the plaintiff argued "that the order of January 4, 1985, was a final judgment on the issue of liability, and that the time for appeal expired thirty days after its entry."

Judge McAuliffe, writing for the Court, could not have made the correct procedure more plain.

"If [plaintiff] were correct concerning the nature of the January 4 order, her analysis of the effect of the later motion to strike would be sound. She is wrong, however, in treating the order of January 4 as a judgment. It was not a judgment—indeed it served no function at all and must be considered a nullity. [Plaintiff] in seeking that order, and the court in granting it, were adhering to a default procedure that existed under former Maryland

Rule 310, but which was changed by the adoption of Rule 2–613, effective July 1, 1984. Under the former procedure, a default judgment could be entered for failure of a defendant to plead, and when entered, became a final and appealable judgment as to liability.

"Under the current procedure, which was in effect when [defendant] defaulted, the *order* of default was correctly entered, but a *judgment* should not have been entered until there had been satisfactory proof of damages. Rule 2–613(e). The amendment to the rule was specifically designed to avoid piecemeal appeals, and no appeal may be taken from the entry of an order of default. Likewise, an immediate appeal could not have been taken from the denial of [Defendant's] motion to strike the default order. That order was interlocutory, because it did not dispose of the entire claim. Rule 2–602. As an interlocutory order, it was subject to revision within the general discretion of the trial court until a final judgment was entered on the claim.

"[defendant's] motion to strike, filed more than thirty days after the entry of the order of default, must be viewed as a request that the trial court invoke its authority to revise an order intended to be final in nature, but which was, in fact, interlocutory. A trial judge possesses very broad discretion to modify an interlocutory order where that action is in the interest of justice."

*Id.* at 425–27, 653 A.2d at 941 (citations omitted) (alterations in original). As *Curry* and *Banegura* make clear, then, the order of default is not a judgment.[23]

---

**23.** Citing to both *Banegura* and *Curry,* Franklin argues that an order of default does not establish liability because a judge has significant discretion to set aside the order of default prior to the entry of a final judgment. The exercise of discretion, however, does not vitiate the establishment of liability.

Franklin, citing the Court of Special Appeals's opinion in *Wells v. Wells,* 168 Md.App. 382, 896 A.2d 1082 (2006), also argues that an order of default does not establish liability because default judgments are not intended to be punitive and because the Rules contain a preference for a determination of claims on the merits. We find this

■ Finally, we would note that to adopt Franklin's reasoning that a Rule 2–534 motion to alter or amend a judgment could be used to contest issues of liability after a default order, never challenged or vacated, was converted to judgment once damages were assessed, would be to undermine the foundation of Rule 2–613 by "giving the defendant in default two opportunities to set . . . aside" the order of default. *Curry*, 337 Md. at 427, 653 A.2d at 942 (citation and quotation omitted). We conclude, therefore, that a defaulting defendant may not revisit issues of liability established by an unvacated order of default pursuant to a Rule 2–534 motion.

■ Franklin asserts, however, that even if it were not permitted to contest issues of liability in a post-judgment motion, after it had failed to move to vacate the order of default, it may still assert its arguments with respect to liability on appeal.[24] Ultimately, a defaulting defendant, under Rule 2–613 has the opportunity to move to vacate the order of default, which, if granted, would leave liability in play. Were the motion to vacate to be denied and damages assessed, after

---

argument unavailing; the preference for a determination on the merits is built into the procedure itself, which unlike its federal and various state counterparts, provides all defendants in default with notice and an opportunity to vacate, prior to the entry of a judgment. *Compare* Rule 2–613, *with, e.g.,* Fed R. Civ. P. 55; Ala. R. Civ. P. 55 (Alabama); Ariz. R. Civ. P. 55 (Arizona); Ark. R. Civ. P. 55 (Arkansas); Colo. R. Civ. P. 55 (Colorado); Idaho R. Civ. P. 55; Ind. R. Trial P. 55 (Indiana); Ky. R. Civ. P. 55.01 (Kentucky); La.Code Civ. Proc. Ann. art. 1702 (Louisiana); Me. R. Civ. P. 55(b)(2) (Maine); Minn. R. Civ. P. 55.01(b) (Minnesota); Mont. R. Civ. P. 55 (Montana); Nev. R. Civ. P. 55 (Nevada); N.M. Dist. Ct. R. Civ. P. 1–055 (New Mexico); N.Y. C.P.L.R. 3215 (McKinney) (New York); N.C. R. Civ. P. 1A–1, 1A–155 (North Carolina); N.D. R. Civ. P. 55 (North Dakota); Ohio R. Civ. P. 55 (Ohio); Or. R. Civ. P. 69 (Oregon); R.I. Dist. Ct. R. Civ. P. 55 (Rhode Island); S.C. R. Civ. P. 55 (South Carolina); S.D. R. Civ. P. 55 (South Dakota); Vt. R. Civ. P. 55 (Vermont); Va. Sup.Ct. R. 3:19 (Virginia); Wash. R. Sup.Ct. Civ. R. 55 (Washington); W. Va. R. Civ. P. 55 (West Virginia); Wis. Stat. Ann. § 806.02 (Wisconsin); Wyo. R. Civ. P. 55 (Wyoming).

24. The only authority Franklin cites in contending that the entry of the default judgment itself is an appealable decision in which liability can be contested directly on appeal, in addition to its appeal from the order denying its Rule 2–534 motion, is *Green v. Brooks*, 125 Md.App. 349, 363, 725 A.2d 596 (1999), which has no relevance to default judgments.

which a final judgment is entered, a party may contest the failure to vacate the default order to challenge liability on appeal.

In *Holly Hall Publications, Inc. v. County Banking & Trust Co.,* 147 Md.App. 251, 807 A.2d 1201 (2002), County Banking and Trust Company (County Banking) filed a complaint against Holly Hall Publications (Holly Hall), alleging that one of County Banking's debtors fraudulently conveyed assets to Holly Hall; County Banking requested an order setting aside the conveyance, or alternatively, a judgment for the value of the property conveyed. *Id.* at 254–55, 807 A.2d at 1203. Holly Hall failed to timely respond to the complaint, and accordingly, the court entered an order of default at County Bank's request; eight days later, Holy Hall moved to vacate the order of default asserting its reasons for failing to plead and contesting its liability, alleging that the debtor never made a fraudulent transfer, because the transfer was for adequate consideration. *Id.* at 255–56, 807 A.2d at 1203–04. The trial judge denied the motion to vacate after a hearing, and thereafter, entered a final judgment after having assessed damages. *Id.* at 257–58, 807 A.2d at 1205.

On appeal, our intermediate appellate court considered whether the trial judge abused his discretion in refusing to vacate the order of default. *Id.* at 260, 807 A.2d at 1206–07. Ultimately, the court determined that the defendant met its burden of proving an equitable reason for failing to plead and that there was an actual controversy on the merits, and therefore, reversed. *Id.* at 267, 807 A.2d at 1211. By moving to vacate the order of default, Holly Hall, the defendant, retained the ability to contest liability by appealing a denial of the motion to vacate, once a default judgment was entered.

In the instant case, however, Franklin *never* moved to vacate the order of default so as to preserve any issues regarding liability on appeal. Were a defaulting party to be able to appeal the liability determination after not having filed a motion to vacate, the two-step default judgment process under Rule 2–613 would be obviated. Permitting a defaulting

party to lie in wait, after having failed to timely respond to a complaint and also to move to vacate a default order would permit the default procedure under Rule 2–613 to be nullified. As a result, we need not reach the merits of the dispute herein.

■ A defaulting party who does not file a motion to vacate which is denied cannot file a Rule 2–534 motion to alter or amend a judgment to contest liability under an order of default after a default judgment has been entered and cannot appeal that judgment in order to contest liability.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**